Fabricant, Judith, J.
INTRODUCTION
This action presents the third round of litigation arising from the legislature’s enactment of chapter 186 of the acts of 2002, which amended G.L.c. 62, §4, to raise the rate of taxation on capital gains. See Peterson v. Comm’r of Revenue, 441 Mass. 420 (2004) (Peterson J), and Peterson v. Comm’r of Revenue, 444 Mass. 128 (2005) (Peterson 71). After the Supreme Judicial Court struck down two versions of the legislation as in violation of article 44 of the Massachusetts constitution, the legislature enacted §57B of chapter 163 of the acts of 2005, which provides for abatement of overpayments made by certain taxpayers over a four-year period, without interest. The plaintiff, who is among the taxpayers affected, alleges that this enactment also violates article 44, as well as various other state and federal constitutional guarantees. Now before the Court is the Commissioner’s motion to dismiss. For the reasons that will be explained, the motion will be allowed.
BACKGROUND
Section 32 of the Revenue Enhancement Act of 2002, St. 2002, c. 186, raised the rate of taxation on long-term capital gains realized after May 1, 2002. In Peterson I, the Supreme Judicial Court struck down that provision as in violation of article 44, because it applied different tax rates to income derived from the same class of property within the same tax year. 441 Mass. at 427-29. The legislature responded by enacting St. 2004, c. 149, §§413, 414. Section 414 established January 1, 2002, as the effective date for the new capital gains rate, but §413 directed the Commissioner not to adjust the tax liability for capital gains for any taxpayer who had already paid at the previous rate for gains realized prior to May 1, 2002. The Supreme Judicial Court held, in Peterson II, that this new enactment was essentially a reformatted version of the previous one, and suffered from the same constitutional infirmity. 444 Mass. at 137. The Court ruled, however, that the May 1, 2002, effective date of §414 was severable from the enforcement provision of §413, and could take effect as enacted. 444 Mass. at 141.
The legislature responded with St. 2005, c. 163, §§57, 57A, and 57B. Section 57 repealed section 413 of the 2004 act. Section 57A moved the effective date of the increase from January 1, 2002 to January 1, 2003. Section 57B addressed the remedy for those taxpayers who had paid at the higher rate for 2002, as follows:
[T]o the extent that. . . any taxpayer has overpaid tax due . . . with respect to long term capital gains *318 recognized [in 2002] the following provisions shall apply:
1. (a) Such taxpayers may apply for abatement. . . pursuant to section 37 of chapter 62C of the General Laws, on or before June 30, 2006 . . .
(b) The taxpayer must apply for such abatement upon the forms or in the manner determined by the commissioner of revenue and shall provide such documentation of the overpayment as the commissioner may require.
(c) The commissioner shall abate any such overpayment in 4 installments, substantially equal in amount, without interest.
(f) This section shall be the exclusive basis for any claim for refund of an overpayment of tax . . . with respect to long term capital gains recognized in [2002]. No interest shall accrue or be payable with respect to such refunds . . .
(h) Notwithstanding paragraph (c), for reasons of administrative convenience, the commissioner may in his discretion refund payments to a taxpayer that total $1000 or less in a single lump sum, without interest.
The plaintiff filed this action on March 18, 2008. He alleges that in June of 2002 he sold a business that he had owned since 1975, and as a result realized long-term capital gains, which would not have been subject to tax under the law in effect prior to the Revenue Enhancement Act of2002. As a result of that act, he paid higher taxes than did taxpayers who realized long-term capital gains during the first four months of 2002. He further alleges that he and similarly situated taxpayers became entitled to rebates under the 2005 act, but that he “was deprived of the use those funds during that time and was therefore not fully paid the debt due him by the Defendants for their unconstitutional collection of taxes.” Further, he alleges, the statute “requires the taxpayers to meet a filing deadline or forego altogether the money the Commonwealth illegally took from them,” which “will result in further unconstitutional deprivations of monies owed to similarly situated taxpayers.” On that basis, he alleges, he and similarly situated taxpayers “have no adequate remedy at law,” “the system for abatements fails to remedy the adjudicated unconstitutional tax,” and he and the proposed class “are irreparably harmed by the Defendant’s conduct and are without any other recourse.”
Based on those allegations, the plaintiff proposes to represent a class of similarly situated taxpayers. He asserts five counts, labeled: declaratoiy judgment (count I); violation of article 44 (count II); violation of article 10 of the declaration of rights (count III); violation of 42 U.S.C. §1983 (count IV);[3] and unjust enrichment (count V). The Commissioner moves to dismiss the entire complaint for failure to exhaust administrative remedies, and also seeks dismissal of each count for failure to state a claim on which relief may be granted.
In response to the Commissioner’s argument regarding failure to exhaust administrative remedies, the plaintiff has provided an affidavit setting forth certain additional facts, as follows.[4] As a result of the 2002 statute, he owed $182,101 that he would not have owed under the law previously in effect. Following enactment of the 2005 statute, he applied for an abatement, which the Commissioner allowed. He received the first three installments of his abatement, in the amount of $45,525.25 each, in April of2006, April of 2007, and April of 2008. Under the statutory scheme, he will receive a fourth installment in the same amount in April of 2009. He has received no interest. His affidavit does not indicate whether he requested interest in his application for abatement, whether the Commissioner ruled on any such request, or whether he appealed to the Appellate Tax Board, and from there to the Appeals Court, from any such ruling.
DISCUSSION
“As a general rule, where an administrative remedy is available, we require a party seeking declaratory relief first to exhaust the opportunities for an administrative remedy.”[5] Space Building Corp. v. Commissioner of Revenue, 413 Mass. 445, 448 (1992), citing Villages Dev. Co. v. Secretary of the Executive Office of Envtl Affairs, 410 Mass. 100, 106 (1991); East Chop Tennis Club v. Massachusetts Comm'n Against Discrimination, 364 Mass. 444, 450 (1973).[6] In the tax area, however, the availability of an administrative remedy does not always foreclose court action; courts have discretion to hear a claim despite the failure to exhaust administrative remedies, under limited circumstances. Id., citing DiStefano v. Commissioner of Revenue, 394 Mass. 315, 319 (1985); Sydney v. Commissioner of Corps. & Taxation, 371 Mass. 289, 293 (1976).
“Exhaustion is generally required unless the administrative remedy is ‘seriously inadequate,’ and exceptions to the rule most often occur when important, novel, or recurrent issues are at stake, when the decision has public significance or when the case reduces to a question of law.” Space Building, 413 Mass. at 448, quoting Sydney, 371 Mass. at 294-95; see also Aronson v. Commonwealth, 401 Mass. 244, 247, 255 (1987) (Court addressed issue despite failure to exhaust administrative remedy where Commonwealth did not object and “this case raises important public questions that ought to be resolved”; “if the issue is important and of general applicability ... we have not always required that the matter first be decided by the Appellate Tax Board”).
The General Laws provide a comprehensive administrative scheme to address taxpayer claims of over *319 payment, including claims for interest. A taxpayer “aggrieved by the assessment of a tax . . . may apply in writing to the commissioner . . . for an abatement.” G.L.c. 62C, §37. If the request is denied, the taxpayer has the right to appeal to the Appellate Tax Board within sixty days of the Commissioner’s decision. G.L.c. 58A, §§6, 7, 7A; c. 62C, §39. The Board hears the matter de novo and issues written findings. G.L.c. 58A, §13; Space Building, 413 Mass. at 451. The Board is empowered to “make such abatement as it sees fit.” G.L.c. 62C, §39. Its jurisdiction includes disputes over interest. See Fleet Nat’l Bank v. Comm’r of Rev., 448 Mass. 441, 446-47 (2007). Although the Board is established and its powers are defined by statute, it has addressed constitutional issues, and has ordered abatement on constitutional grounds, despite contrary statutory provisions. The Supreme Judicial Court has upheld such orders. See Comm’r of Rev. v. Lonstein, 406 Mass. 92, 93 (1989); see also Lily Transp., Inc. v. Comm’r of Rev., 427 Mass. 228, 231-32. Decisions of the Appellate Tax Board are subject to review by the Appeals Court and ultimately the Supreme Judicial Court. G.L.c. 58A, §13.
The particular statute in issue here, as quoted supra, acknowledges and expressly incorporates these procedures. Section 57B of c. 163 of the acts of 2005 provides that “any taxpayer” who has overpaid taxes on capital gains for 2002 “may apply for abatement . . . pursuant to section 37 of Chapter 62C,” and further, that “(t]his section shall be the exclusive basis for any claim for refund of an overpayment . . . with respect to long term capital gains” for 2002. It is thus plainly apparent that the legislature considered what procedure should be available to taxpayers in the position of this plaintiff, and chose the administrative process. As the plaintiff emphasizes, the legislature also expressly barred the payment of interest on abatement of the overpayment, while at the same time requiring payment over four years. That directive gives rise to the constitutional questions the plaintiff seeks to raise here.
The plaintiff does not allege, and his affidavit does not indicate, that he, or any of the other taxpayers he proposes to represent, has exhausted the administrative remedies provided by statute. He has, according to his affidavit, applied for and received an abatement of his overpayment. He does not indicate, however, that his abatement application included a claim for interest; that the Commissioner denied such claim; or that he appealed from such denial to the Appellate Tax Board or from there to the Appeals Court. The Court therefore considers whether the allegations presented here fall within the narrow category of cases in which a court can properly decide a tax question despite the failure to exhaust.
As discussed supra, factors to be considered in making that determination are whether (1) the administrative remedy is seriously inadequate; (2) important, novel, or recurrent issues are at stake; and (3) the decision has public significance or reduces to a question of law. Space Building, 413 Mass, at 448. The plaintiff argues that the administrative remedy is inadequate because the statute expressly forecloses interest, so that the Commissioner could not have granted the relief he seeks. He may be correct that the Commissioner could not have granted interest in the face of the statutory directive to the contrary, but the Appellate Tax Board could have done so, on appeal from an adverse decision of the Commissioner, if the Constitution so requires. See Comm’r of Rev. v. Lonstein, 406 Mass. at 93-94. The administrative remedy, therefore, was not inadequate.[7]
The issues presented by this action are certainly important to the plaintiff and others affected by the 2005 statute, and they may be novel, but there is no reason to believe that they will be recurrent. To the contrary, the issues arise from a special act of the legislature that affects a particular group of taxpayers with respect to taxes paid for a single type of income in a single year. For that reason, these issues have no more public significance than any other tax questions, all of which affect the public fisc. As to whether the issues reduce to questions of law, it appears likely that they do, although the Court cannot determine, from the allegations of the complaint and the information provided in the plaintiffs affidavit, whether factual issues relating to the timing of payments made and the amounts involved might bear on the legal issues with respect to the named plaintiff or to other members of the proposed class.[8]
The factors identified in Space Building, 413 Mass, at 448-49, thus weigh generally against the exercise of discretion to excuse exhaustion of administrative remedies in this case. Stronger than these factors, in the Court’s view, is the express legislative determination that the administrative process provided by the general laws be the “exclusive basis” for any claim under the statute. In the face of that clear directive, the Court cannot entertain this action.
CONCLUSION AND ORDER
For the reasons stated, the Defendants’ Motion to Dismiss the Complaint is ALLOWED.

In his memorandum in opposition to the present motion, the plaintiff waives his claim under 42 U.S.C. §1983, acknowledging that that statute does not provide a cause of action to challenge state tax statutes. See National Private Truck Council, Inc., v. Oklahoma Tax Cmm’n, 515 U.S. 582, 588 & n.5, 592 (1995).

See generally, Ginther v. Commissioner of Insurance, 427 Mass. 319, 320-21 (1998) (considering facts provided in affidavit, as well as those alleged in complaint, on motion to dismiss for lack of standing).

Even where a Court can properly entertain a claim for declaratory judgment without requiring exhaustion, it cannot itself order abatement, or issue an award of money damages against the Commissioner. See Perini Corp. v. Comm'r of Rev., 419 Mass. 763, 764 n.1 (1995); Space Building, 413 Mass, at 446, n.1. Thus, the Court would be required to dismiss so much of the plaintiffs complaint as seeks a monetary award regardless of its conclusion on the issue of exhaustion.

This rule is particularly strong where, as may be the case here, a party seeks to use a declaratory judgment action to avoid the consequences of failing to meet a deadline for an administrative claim. See Doyle v. Department of Industrial Accidents, 50 Mass.App.Ct. 42, 47 n.6 (2000); Rosenfeld v. Bd. of Health of Chilmark, 27 Mass.App.Ct. 621, 624 (1999).

The plaintiff cites Duarte v. Commissioner of Revenue, 451 Mass. 399, 408 (2008). There the Appellate Tax Board had invalidated a regulation promulgated by the Commissioner on both statutory and constitutional grounds. The Supreme Judicial Court held that the Board “lacks authority to declare regulations promulgated by the commissioner to be facially ‘invalid and of no legal effect,’ although it may find that their application in a case before it is violative of due process or inconsistent with the statutory purpose.” The Court went on to affirm the Board’s decision vacating the action of the Commissioner in that case on both statutory and constitutional grounds. 451 Mass, at 410-13. Duarte does not support the plaintiffs position; to the contrary, it illustrates the power of the Board to remedy constitutional violations when presented in accord with the administrative process provided by statute.

The Court notes the Supreme Judicial Court’s strong admonition against class certification of tax cases in Aronson, 401 Mass, at 255.