BARKER ET AL. *v.* KANSAS ET AL.

No. 91–611.   Argued March 3, 1992—Decided April 21, 1992

WHITE, J., delivered the opinion for a unanimous Court. STEVENS, J., filed a concurring opinion, in which THOMAS, J., joined, *post,* p. 605.

*Kevin M. Fowler* argued the cause for petitioners. With him on the brief were *Kenton C. Granger, Raymond L. Dahlberg, Angela K. Green, Roger M. Theis, John C. Frieden,* and *Terence A. Lober.*

*John F. Manning* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Starr, Assistant Attorney General Peterson, Deputy Solicitor General Wallace,* and *David English Carmack.*

*James A. D. Bartle* argued the cause for respondents. With him on the brief were *Mark A. Burghart* and *Michael M. Rehm.**

---

*\*Eugene O. Duffy* filed a brief for the Retired Officers Association as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the State of Arizona et al. by *Mary Sue Terry,* Attorney General of Virginia, *H. Lane Kneedler,* Chief Deputy Attorney General, and *Gail Starling Marshall,* Deputy Attorney General, *Peter W. Low,* and by the Attorneys General for their respective States as follows: *Grant Woods* of Arizona, *Winston Bryant* of Arkansas, *Michael J. Bowers* of Georgia, *Bonnie J. Campbell* of Iowa, *Marc Racicot* of Montana, *Susan B. Loving* of Oklahoma, *Paul Van Dam* of Utah, and *James E. Doyle* of Wisconsin; and for the National Conference of State Legislatures et al. by *Richard Ruda* and *Michael G. Dzialo.*

JUSTICE WHITE delivered the opinion of the Court.

The State of Kansas taxes the benefits received from the United States by military retirees but does not tax the benefits received by retired state and local government employees. Kan. Stat. Ann. § 79–3201 *et seq.* (1989).[1] The issue before us is whether the tax imposed on the military retirees is inconsistent with 4 U. S. C. § 111, which provides:

> "The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States, a territory or possession or political subdivision thereof, the government of the District of Columbia, or an agency or instrumentality of one or more of the foregoing, by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation."

Shortly after our decision in *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803 (1989), which invalidated under § 111 the Michigan income tax imposed on federal civil service re-

---

[1] As the Kansas Supreme Court explained, to arrive at the adjusted gross income of a taxpayer under the Kansas Income Tax Act, the starting point is the adjusted gross income under the federal Internal Revenue Code, which includes retirement benefits received by retired military officials and state and local government retirees. 249 Kan. 186, 190–191, 815 P. 2d 46, 49–50 (1991). As relevant for present purposes, in calculating Kansas' adjusted gross income, the retirement benefits of state and local governments are deducted and are exempt from taxation. See Kan. Stat. Ann. § 79–32,117(c)(ii) (Supp. 1990); § 74–4923(b) (Supp. 1990); see also 249 Kan., at 190–191, 815 P. 2d, at 49–50 (listing classes exempt from state taxation). Benefits received under the Federal Civil Service Retirement System and by retired railroad employees are also exempt. Kan. Stat. Ann. §§ 79–32,117(c)(vii) and (viii) (Supp. 1990). Not deducted and hence taxable are benefits received by retired military personnel, certain Central Intelligence Agency employees, officials serving in the National Oceanic and Atmospheric Association or the Public Health Service, and retired federal judges. See 249 Kan., at 205, 815 P. 2d, at 58.

tirees, two class actions were filed in Kansas District Court challenging the state income tax imposed on military retirement benefits. Together the classes comprised some 14,000 military retirees, who received federal Armed Forces retirement benefits and were subject to the Kansas income tax for one or more of the tax years from 1984 through 1989. The classes also included spouses of the retirees, where applicable. Plaintiff taxpayers sought a declaratory judgment that the Kansas income tax discriminates against them in favor of state and local government retirees, in violation of § 111 and the constitutional principles of intergovernmental tax immunity applied in *Davis*. They also requested a permanent injunction to prohibit assessment of the tax against military retirees, as well as refunds of any taxes paid by class members for the tax years 1984 through 1989.[2] The District Court granted summary judgment for the defendants, and the Supreme Court of Kansas affirmed, 249 Kan. 186, 815 P. 2d 46 (1991). We granted certiorari because the holding below is arguably inconsistent with our decision in *Davis* and conflicts with decisions of other state courts of last resort. 502 U. S. 977 (1991).[3]

Our approach to deciding this case is controlled by *Davis*, which invalidated a Michigan law that imposed taxes on federal civil service retirees' benefits but not on benefits received by state and local government retirees. In reaching

---

[2] The taxpayers also relied on the Supremacy Clause of the United States Constitution, the Privileges and Immunities Clause of the Fourteenth Amendment, and Article 11, § 2, of the Kansas Constitution. The taxpayers further alleged that the State deprived them of their civil rights as secured by the United States Constitution and laws in violation of the Fourteenth Amendment and of 42 U. S. C. § 1983. See 249 Kan., at 188, 815 P. 2d, at 48.

[3] See, *e. g., Kuhn* v. *State*, 817 P. 2d 101 (Colo. 1991) (en banc); *Pledger* v. *Bosnick*, 306 Ark. 45, 811 S. W. 2d 286 (1991); and *Hackman* v. *Director of Revenue*, 771 S. W. 2d 77 (Mo. 1989) (en banc), cert. denied, 493 U. S. 1019 (1990).

that decision, we traced the history of 4 U. S. C. § 111 and concluded that "the retention of immunity in § 111 is coextensive with the prohibition against discriminatory taxes embodied in the modern constitutional doctrine of intergovernmental tax immunity." 489 U. S., at 813. Under that doctrine, we evaluate a state tax that is alleged to discriminate against federal employees in favor of state employees by inquiring "whether the inconsistent tax treatment is directly related to, and justified by, 'significant differences between the two classes.'" *Id.*, at 816 (quoting *Phillips Chemical Co.* v. *Dumas Independent School Dist.*, 361 U. S. 376, 383 (1960)).

Well aware of *Davis*, the State Supreme Court undertook such an inquiry and concluded that significant differences existed between military retirees, who are taxed by Kansas, and state and local government retirees, who are not. The court proceeded to consider the State's six proffered distinctions between military retirees and state and local government pensioners:

> "(1) [F]ederal military retirees remain members of the armed forces of the United States after they retire from active duty; they are retired from active duty only; (2) federal military retirees are subject to the Uniform Code of Military Justice (UCMJ) and may be court martialed for offenses committed after retirement; (3) they are subject to restrictions on civilian employment after retirement; (4) federal military retirees are subject to involuntary recall; (5) federal military retirement benefits are not deferred compensation but current pay for continued readiness to return to duty; and (6) the federal military retirement system is noncontributory and funded by annual appropriations from Congress; thus, all benefits received by military retirees have never been subject to tax." 249 Kan., at 196, 815 P. 2d, at 53.

The court deemed the first four differences significant, not because in themselves they justified disparate tax treatment, but because they supported the fifth distinction—that military retirement benefits constitute reduced pay for reduced current services, rather than deferred compensation for past services. *Id.*, at 197, 815 P. 2d, at 53. By contrast, "[s]tate and local government retirement benefits are deferred compensation," the court found, and "not current pay." *Ibid.* The court concluded that this principal distinction between military retirees and state and local government retirees justified their differential treatment under the State's tax laws. Accordingly, it held that a military retiree's benefits were as legally subject to state taxation as the income of active military personnel, whose pay was liable for state taxation pursuant to the United States' consent, as expressed in 4 U. S. C. § 111.

Military retirees unquestionably remain in the service and are subject to restrictions and recall; in these respects they are different from other retirees, including the state and local government retirees whom Kansas does not tax. But these differences, standing alone, do not justify the differential tax treatment at issue in this case. Nor do these differences persuasively indicate that, for purposes of 4 U. S. C. § 111, Kansas may treat military retirement pay as reduced pay for reduced services. As a general matter, a military retiree is entitled to a stated percentage of the pay level achieved at retirement, multiplied by the years of creditable service. Brief for United States as *Amicus Curiae* 11, n. 16. In this respect, "retired [military] pay bears some of the features of deferred compensation. The amount of retired pay a service member receives is calculated not on the basis of the continuing duties he actually performs, but on the basis of years served on active duty and the rank obtained prior to retirement." *McCarty* v. *McCarty*, 453 U. S. 210, 223, n. 16 (1981) (citation omitted). By taking into account years of service, the formula used to calculate retirement benefits

leaves open the possibility of creating disparities among members of the same preretirement rank. Such disparities cannot be explained on the basis of "current pay for current services," since presumably retirees subject to these benefit differentials would be performing the same "services." Furthermore, military benefits are determined in a manner very similar to that of the Kansas Public Employee Retirement System. Brief for United States as *Amicus Curiae* 11, n. 16. In terms of calculating retirement benefits, therefore, we see no significant differences between military retirees and state and local government retirees that justify disparate tax treatment by the State.

In holding to the contrary, however, the Kansas Supreme Court found support in some of our precedents. In *United States* v. *Tyler*, 105 U. S. 244 (1882), for example, the Court decided that officers retired from active military service were entitled to the same percentage increase in pay that a statute had provided for active officers. The Court reached this result in part by characterizing military retirement pay as "compensation [that] is continued at a reduced rate, and the connection is continued, with a retirement from active service only." *Id.*, at 245.[4]

The State Supreme Court also found support in *McCarty, supra.* In that case the California courts considered the applicability of state community property laws to the military retirement benefits for which an officer who had 18 years of service would be eligible 2 years hence. The California courts had held these benefits subject to division upon disso-

---

[4] The Court explained:

"It is impossible to hold that men who are by statute declared to be a part of the army, who may wear its uniform, whose names shall be borne upon its register, who may be assigned by their superior officers to specified duties by detail as other officers are, who are subject to the rules and articles of war, and may be tried, not by a jury, as other citizens are, but by a military court-martial, for any breach of those rules, and who may finally be dismissed on such trial from the service in disgrace, are still *not* in the military service." *United States* v. *Tyler*, 105 U. S., at 246.

lution of the marriage. In this Court the officer challenged the holding on two grounds: first, that his prospective retirement benefits would be current pay, not subject to division as deferred compensation for services performed during the marriage; and second, that applying the community property law to retirement benefits conflicted with the federal military scheme regardless of whether retired pay is current income or deferred compensation. See *id.*, at 221. Citing and quoting *Tyler, supra,* our opinion noted that military retirees differed in some respects from other retired federal personnel and that these differences had led various courts, "including this one," to opine that military retirement pay is reduced compensation for reduced current services. 453 U. S., at 222. We found no need, however, to decide "whether federal law prohibits a State from characterizing retired pay as deferred compensation," because we sustained petitioner's alternative ground for overturning the judgment below. *Id.*, at 223.

The Kansas Supreme Court reasoned that *McCarty*'s recognition of the *Tyler* holding, as well as the decisions of several Courts of Appeals, indicated that *Tyler* controlled the description of military retirement pay. It thus concluded that taxing military retirement pay as current income could not validly be characterized as discriminating in favor of state and local government employees, whose benefits were exempt as being deferred compensation for past services. See 249 Kan., at 198, 815 P. 2d, at 54. For several reasons, we find this reading of our precedents unpersuasive.

First, *Tyler*'s statement that retirement pay is effectively indistinguishable from current compensation at a reduced rate was unnecessary to reach the result that Congress intended to include the retirement benefits of a certain class of retired officers in its provision for increasing the pay of active-duty officers. In holding that such retired officers were eligible for this increase, the Court based its holding on the "uniform treatment" of retired and active officers in

various statutory provisions that made the retired officers "a part of the army" for purposes of determining eligibility for the increase. *Tyler*, 105 U. S., at 245–246. The Court described "a manifest difference in the two kinds of retirement, namely, retiring from active service and retiring wholly and altogether from the service." *Id.*, at 245. The latter group were ineligible for the pay increase because their connection to the service had been completely terminated. In interpreting the applicable statutory provisions, therefore, the "uniform treatment" of active-duty officers and the one class of retired officers was crucial to the decision; *Tyler* thus cannot be taken as establishing that retirement benefits are for all purposes the equivalent of current compensation for reduced current services.

Moreover, although *McCarty* referred to *Tyler*, it did not expressly approve *Tyler*'s description of military retirement pay. To the contrary, by declining to hold that federal law forbade the States to treat military retirement pay as deferred income and resting our decision on another ground, we reserved the question for another case. To punctuate this point, we noted that, despite *Tyler*, the state courts were divided as to whether military retirement pay is current income or deferred compensation. See *McCarty*, 453 U. S., at 222–223, nn. 15 and 16. We also stated that although military retirement pay bears some of the features of deferred compensation, two indicia of retired military service include a restriction on activities and a chance of being recalled to active duty. Hence, "the possibility that Congress intended military retired pay to be in part current compensation for those risks and restrictions suggests that *States must tread with caution in this area,* lest they disrupt the federal scheme." *Id.*, at 224, n. 16 (emphasis added).

In urging States to be cautious in treating military retirement pay, *McCarty* thus should not be read to consider *Tyler* as settling the issue. Indeed, our handling of the community property dissolution issue suggests the opposite. In *Mc-*

*Carty* we said that "[t]he community property division of military retired pay rests on the premise that that pay, like a typical pension, represents deferred compensation for services performed during the marriage." 453 U. S., at 221. Had we accepted as definitive for all purposes *Tyler*'s characterization of such pay as current income, our decision in *McCarty* would have been simple because we would have been foreclosed from treating military retired pay as deferred compensation. Such a holding would have been a much easier way of deciding *McCarty* than the alternative basis for decision—that the application of California's community property law conflicted with the federal military retirement scheme.

Finding no support for the Kansas Supreme Court's holding either in differences in the method of calculating benefits or in our precedents discussing military retirement pay, we examine congressional intent, as inferred through other applicable statutes that treat military retirement pay. Promptly after *McCarty*, for example, Congress enacted the Uniformed Services Former Spouses' Protection Act, 10 U. S. C. § 1408(c)(1), which negated *McCarty*'s holding by giving the States the option of treating military retirement pay "either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." Because the premise behind permitting the States to apply their community property laws to military retirement pay is that such pay is deferred compensation for past services, see *McCarty, supra,* at 221, Congress clearly believed that payment to military retirees is in many respects not comparable to ordinary remuneration for current services. To extend to States the option of deeming such benefits as part of the marital estate as a matter of state law would be inconsistent with the notion that military retirement pay should be treated as indistinguishable from compensation for reduced current services.

Furthermore, both federal and Kansas income tax law treat military retirement pay as deferred compensation for the purpose of determining deductibility of contributions to an individual retirement account (IRA). For federal purposes, an IRA deduction is limited to the amount of the taxpayer's compensation or $2,000, whichever is less. But the term "compensation" does not include "any amount received as a pension or annuity and does not include any amount received as deferred compensation." 26 U. S. C. § 219(f)(1). Under this provision, military retirement benefits are not compensation for the purpose of making deductible contributions to an IRA. See generally M. Weinstein, Mertens Law of Federal Income Taxation § 25C.12, p. 58 (1988). The State Supreme Court in this case noted that the Kansas tax law follows the federal scheme and does not treat military retirement pay as current compensation for IRA purposes, like other types of retirement benefits. 249 Kan., at 201–202, 815 P. 2d, at 56. The court believed that this treatment of military retirement pay was limited to the IRA context, id., at 202–203, 815 P. 2d, at 57, a position we find unpersuasive. The court's view ignores the importance of this provision to understanding that Congress for many purposes does not consider military retirement pay to be current compensation for current services. The State's position is weakened further by another fact, that Kansas tax law considers military retirement benefits as current compensation under its general income tax provision but it does not for IRA deductibility purposes. The court asserted that "the distinction is not so much the characterization as current income or deferred compensation, but rather active versus passive activities required to earn the income." Id., at 203, 815 P. 2d, at 57. But as the United States persuasively contends: "The State's failure to treat military retired pay consistently suggests that the State's articulated rationale is not in fact the basis for the disparate treatment, but only a cloak for discrimina-

tion against federally funded benefits." Brief for United States as *Amicus Curiae* 22.

We therefore determine that the Kansas Supreme Court's conclusion that, for purposes of state taxation, military retirement benefits may be characterized as current compensation for reduced current services does not survive analysis in light of the manner in which these benefits are calculated, our prior cases, or congressional intent as expressed in other provisions treating military retirement pay. For purposes of 4 U. S. C. § 111, military retirement benefits are to be considered deferred pay for past services. In this respect they are not significantly different from the benefits paid to Kansas state and local government retirees.[5] Accordingly, we reverse the judgment of the Kansas Supreme Court and remand the case for further proceedings not inconsistent with this opinion.

*So ordered.*

JUSTICE STEVENS, with whom JUSTICE THOMAS joins, concurring.

While I agree with the Court's explanation of why this case is controlled by *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803 (1989), I remain convinced that that case seri-

---

[5] In listing the differences between the two classes of retirees involved here, the State Supreme Court also observed that Kansas state and local retirees have contributed to their retirement benefits and that their contributions have been taxed as part of their current income. Military personnel, on the other hand, do not contribute to their retirement benefits, which are paid out of annual appropriations. As we read the court, however, it did not rest its decision on this difference and in the end returned to its basic holding that military retirees "receive current compensation while all persons receiving state and local government retirement benefits receive deferred compensation." 249 Kan., at 205, 815 P. 2d, at 58. Moreover, we note that the State applies its income tax to other federal retirees who contributed to their benefits, such as members of the Central Intelligence Agency, Foreign Service, bankruptcy judges, and United States magistrates. See *ibid.*

ously misapplied the doctrine of intergovernmental tax immunity. A state tax burden that is shared equally by federal retirees and the vast majority of the State's citizens does not discriminate against those retirees. See *id.*, at 823–824 (STEVENS, J., dissenting). The Federal Government has a legitimate interest in protecting its employees from disparate treatment, but federal judges should not be able to claim a tax exemption simply because a State decides to give such a benefit to the members of its judiciary instead of raising their salaries. I write separately to make this point because what I regard as this Court's perverse application of the non-discrimination principle is subject to review and correction by Congress. See *Prudential Insurance Co.* v. *Benjamin,* 328 U. S. 408 (1946).